# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2019 ND 286

City of Fargo, a political subdivison
of the State of North Dakota,                                    Plaintiff and Appellee

     v.

Karen C. Wieland,                                             Defendant and Appellant

## No. 20190153

Appeal from the District Court of Cass County, East Central Judicial District, the Honorable John Charles Irby, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Jane L. Dynes, Fargo, ND, for plaintiff and appellee.

Jonathan T. Garaas, Fargo, ND, for defendant and appellant.

**McEvers, Justice.**

[¶1]   Karen Wieland appeals from a judgment allowing the city of Fargo to take her property for flood mitigation purposes and awarding her $939,044.32 in just compensation, attorney fees, costs, and statutory expenses.  Because the district court did not misapply the law in concluding the taking of Wieland's property was necessary for a public use, we affirm the judgment.

I

[¶2]   Wieland owned a home located at Copperfield Court in Fargo.  The property, which abuts Drain No. 27, frequently flooded.  After the 2009 flood in Fargo, Wieland and other area residents asked the City to fix the banks on Drain No. 27 to provide flood protection, and the City began examining possible solutions to the flooding problems.  The City engineering staff and consulting engineers held public information meetings with landowners in the Copperfield Court area.  In February 2012, the City held a meeting with the landowners and informed them that the recommended flood protection plan would require the acquisition of the Wieland property and other property to build an earthen levee for permanent flood protection.  In August 2012, the Board of City Commissioners approved the recommended project and directed staff to prepare implementation and funding plans for the project.

[¶3]   Wieland and the City for years discussed the voluntary acquisition of her property.  The City eventually offered Wieland the property's appraised value of $725,000 plus statutory costs and moving expenses.  Wieland rejected the offer.  On December 19, 2016, the City issued a "resolution of necessity" stating "it is necessary for the city of Fargo to acquire [Wieland's property] to allow for such use as the construction of a flood protection project to protect the city of Fargo."  In *Brandt v. City of Fargo*, 2018 ND 26, ¶¶ 1, 14, 905 N.W.2d 764, we affirmed dismissal of Wieland's challenge to the City's resolution of necessity because there was no statutory basis authorizing the appeal.

[¶4]   After further negotiations with Wieland failed, the City in April 2017 brought this eminent domain action seeking to acquire Wieland's property for flood protection purposes.   The district court granted partial summary judgment concluding that permanent flood protection was a public use authorized by law and that the taking of Wieland's property was necessary to the use. Following a trial, the jury awarded Wieland $850,000 as just compensation for the taking.  The court awarded her an additional $89,044.32 for attorney fees and other costs.

## II

[¶5]   Wieland argues the district court erred in granting summary judgment in favor of the City on the eminent domain questions of public use and necessity.

[¶6]   Our standard for reviewing summary judgments is well established.

> Summary judgment is a procedural device under N.D.R.Civ.P. 56(c) for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law.  The party seeking summary judgment must demonstrate there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law.  In deciding whether the district court appropriately granted summary judgment, we view the evidence in the light most favorable to the opposing party, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record.  A party opposing a motion for summary judgment cannot simply rely on the pleadings or on unsupported conclusory allegations.  Rather, a party opposing a summary judgment motion must present competent admissible evidence by affidavit or other comparable means that raises an issue of material fact and must, if appropriate, draw the court's attention to relevant evidence in the record raising an issue of material fact. When reasonable persons can reach only one conclusion from the evidence, a question of fact may become a matter of law for the court to decide. A district court's decision on summary judgment is a question of law that we review de novo on the record.

*Brock v. Price*, 2019 ND 240, ¶ 10, 934 N.W.2d 5 (quoting *Smithberg v. Smithberg*, 2019 ND 195, ¶ 6, 931 N.W.2d 211).

[¶7]   Wieland argues the district court erred in granting summary judgment because she raised a genuine issue of material fact to preclude summary judgment, and because the City presented no evidence to support the court's decision that the requirements of N.D.C.C. § 32-15-05 have been satisfied. Section 32-15-05, N.D.C.C., provides:

> Before property can be taken it must appear:
>
> 1.     That the use to which it is to be applied is a use authorized by law.
> 2.     That the taking is necessary to such use.
> 3.     If already appropriated to some public use, that the public use to which it is to be applied is a more necessary public use.

A

[¶8]   In *Montana-Dakota Utils. Co. v. Behm*, 2019 ND 139, ¶ 9, 927 N.W.2d 865, we discussed the requirement of "public use":

> Where a property owner contests "public use" under N.D.C.C. ch. 32-15, "there is a presumption a use is public when the Legislature has declared it to be and we treat the Legislature's decision with the deference due a coordinate branch of government." *City of Medora v. Golberg*, 1997 ND 190, ¶ 8, 569 N.W.2d 257. Nevertheless, "the ultimate decision regarding whether a proposed use of property is, in fact, a public use is a judicial question." *Id.*

The Legislature has declared "[f]lood control projects" to be a "public use" by giving municipalities the power:

> To acquire, construct, maintain, operate, finance, and control flood control projects, both within and adjacent to such municipality, and for such purpose to acquire the necessary real property and easements therefor by purchase and eminent domain, in accordance with chapter 32-15, and to adopt such ordinances as may reasonably be required to regulate the same.

3

N.D.C.C. § 40-05-01(67).

[¶9] The City's resolution of necessity in this case states:

> WHEREAS, the Red River of the North, its tributaries, and associated drain system, are prone to frequent flooding which presents significant risk to the inhabitants of the city, property, infrastructure, and the economy of the city of Fargo and the surrounding communities;
>
> WHEREAS, the city of Fargo has identified viable flood control and protection options;
>
> WHEREAS, the city of Fargo has undertaken considerable effort, at considerable expense, to construct flood control and protection projects to protect the city of Fargo from anticipated flood events;
>
> WHEREAS, the city of Fargo, based on information and recommendation provided by the city of Fargo Engineering Department and consulting engineers, have identified properties necessary to be acquired in order to accomplish real and meaningful flood protection to the inhabitants, property, infrastructure, and economy of the city of Fargo; and
>
> WHEREAS, the city of Fargo has, or will, continue to negotiate in good faith to secure the identified necessary properties.
>
> NOW THEREFORE, BE IT RESOLVED THAT the public use for the properties identified is a use provided for by law;
>
> BE IT FURTHER RESOLVED THAT it is necessary for the city of Fargo to acquire the following identified properties to allow for such use as the construction of a flood protection project to protect the city of Fargo: [Wieland's property].

[¶10] Wieland argues the City's resolution of necessity is "fatally flawed" because it allows the City to "condemn first, decide what do to with the property later." Wieland relies on *City of Stockton v. Marina Towers LLC*, 88 Cal.Rptr.3d 909, 921-22 (Cal. Ct. App. 2009), in which the court held a resolution of necessity describing a project as the "acquisition of additional land in conjunction with potential development" was invalid because it did not sufficiently define the project. The court reasoned:

4

> We fail to discern how this language notifies the property owner and the public what project is intended for the property. The project is described as the "acquisition of additional land" in "conjunction with potential development." But to say that the project is the "acquisition of additional land" is the same as saying the project is the condemnation itself. To state that the acquisition is "in conjunction" with potential development or that it is "consistent with" redevelopment activities going on in the area adds nothing[.]

*Id.*

[¶11] The City's resolution of necessity in this case does not suffer from the same infirmities as the resolution invalidated in *Marina Towers*. The City specifically describes the purpose as a "flood protection project," and this description is analogous to examples given by the *Marina Towers* court that it said would satisfy the requirement of a brief description of a public use: "A statement, for example, that the public use is an 'elementary school and grounds' or 'right of way for a freeway' or 'open space to be maintained in its natural condition' would satisfy this requirement." 88 Cal.Rptr.3d at 921 (internal citation omitted).

[¶12] Wieland argues the resolution of necessity is invalid because N.D.C.C. § 61-16.1-38 requires that "complete plans and specifications" for a dike "must be presented first to the state engineer." Wieland's argument fails because N.D.C.C. ch. 61-16.1 governs the operations of water resource districts, not municipalities.

[¶13] Wieland also argues that, because at the time the resolution of necessity was adopted and the eminent domain action was commenced N.D.C.C. § 48-01.2-01(20) defined a "public improvement" as any improvement "on public or nonpublic land" exceeding the monetary threshold contained in N.D.C.C. § 48-01.2-02.1, the City was required to "procure plans, drawings, and specifications for the improvement from an architect or engineer" under N.D.C.C. § 48-01.2-02. Wieland's attempt to apply the statutory bidding requirements in N.D.C.C. ch. 48-01.2 as a prerequisite to the issuance of a resolution of necessity and the commencement of an eminent domain action is misplaced. This Court has

5

recognized that a statute must be construed logically and not to produce an absurd result:

> In *Haggar Co. v. Helvering*, 308 U.S. 389, 394, 60 S.Ct. 337, 339, 84 L.Ed. 340 (1940), the Supreme Court of the United States stated as follows:
>> "All statutes must be construed in the light of their purpose. A literal reading of them which would lead to absurd results is to be avoided when they can be given a reasonable application consistent with their words and with the legislative purpose."

*Fireman's Fund Mortg. Corp. v. Smith, 436 N.W.2d 246, 247 (N.D. 1989).*

[¶14] The purpose of competitive bidding is not intended to be a prerequisite to a resolution of necessity; rather, the competitive bidding requirements were enacted for the benefit of the public to invite competition, prevent favoritism, fraud, and collusion, and secure the best work and supplies at the lowest price. *See Becker Elec., Inc. v. City of Bismarck*, 469 N.W.2d 159, 160 (N.D. 1991). It would be absurd to require contractors to submit detailed construction plans and bids for a proposed project that not only will occur years into the future, but is also contingent on the local governing body ever acquiring the property. Wieland's argument ignores that the City did not adopt the resolution of necessity in a vacuum. Indeed, the City worked with its own engineers and consulting engineers for years to address Fargo's flooding problems, and the engineers presented various plans and proposals. The City was provided detailed site plans and maps of the proposed project. We conclude the information presented by the engineers to the City was sufficient to satisfy the requirements of N.D.C.C. § 48-01.2-02.

[¶15] The district court correctly determined as a matter of law that the City's flood protection project was for a public use.

B

[¶16] Wieland argues the district court erred in ruling the proposed taking of her property was necessary for the public use.

6

[¶17] We have explained a court's role in determining public necessity:

> To clarify the court's role in the determination of the question of public necessity, we emphasize that the determination of a condemning authority to exercise the power of eminent domain for an authorized public use is solely a legislative or political question which is not subject to judicial review. . . . The court's review of public necessity is limited to the question of whether the taking of the particular property sought to be condemned is reasonably suitable and usable for the authorized public use. Much latitude is given to the condemning authority to determine the location and the extent of the property to be acquired, and a taking is not objectionable merely because some other location might have been made or some other property obtained that would have been as suitable for the purpose. In the absence of bad faith, gross abuse of discretion, or fraud by the condemning authority in its determination that the property sought is necessary for the authorized use and is pursuant to specific statutory authority, such determination should not be disturbed by the courts.

*Behm*, 2019 ND 139, ¶ 5, 927 N.W.2d 865 (quoting *Oakes Mun. Airport Auth. v. Wiese*, 265 N.W.2d 697, 700 (N.D. 1978)). A district court may review additional evidence presented at eminent domain proceedings in deciding whether a local governing body abused its discretion in finding a taking was necessary. *See City of Jamestown v. Leevers Supermarkerts, Inc.*, 552 N.W.2d 365, 371 (N.D. 1996).

[¶18] The undisputed evidence in the record at the time of partial summary judgment established that after years of extensive professional studies on permanent flood protection for the Copperfield Court area, Wieland's home could not remain at its location. Soil stability studies of the existing banks of Drain No. 27 indicated that a setback line was required to maintain safety and that nothing could be built between the setback line and Drain No. 27. Because of the setback distance from Drain No. 27 and the necessary maintenance area, the levee was required to be constructed on Wieland's property. As the district court ruled, "[t]here was no evidence of any bad faith or fraud on the part of the City in seeking the acquisition of the Wieland property." We conclude the

7

court correctly ruled as a matter of law that the proposed taking of Wieland's property was necessary for the public use.

C

[¶19] Wieland argues the district court erred in ruling that permanent flood protection is a more necessary public use than any existing easements or drain dedication on her property. The question of greater necessity is for a court to resolve. *See Bd. of Educ. of City of Minot v. Park Dist. of City of Minot*, 70 N.W.2d 899, 905 (N.D. 1955). While generally the question of greater necessity is a finding of fact, here, the relevant facts are undisputed.

[¶20] The record reflects that a drain dedication and drainage easement are located on Wieland's property near Drain No. 27 and a utility easement is located on the street side of the property. It also appears the drain dedication, drain easement, and utility easement will not be repealed or extinguished by the levee. The evidence shows the levee is necessary to protect waters rising from the drain and to protect people and property in the area. The district court noted "[t]here was no evidence of any negative or adverse impact to other easements on the property by the construction of the earthen levee on the Wieland property." We agree with the district court's conclusion of law on this issue:

> [T]he existence of easements on the Wieland property are not in conflict with the intended use of the property by the City and that the easements and the earthen levee, when constructed, can co-exist and that, alternatively, permanent flood protection is a more necessary public use.

[¶21] We conclude the City satisfied the elements necessary to take Wieland's property.

D

[¶22] Wieland argues reversal is nevertheless required because the City failed to comply with a "statutory condition precedent to any condemnation action."

[¶23]  Wieland relies upon N.D.C.C. § 54-12-01.1, which at the relevant time provided:

> The attorney general, with the cooperation of appropriate state agencies, shall prepare pamphlets in readable format describing the eminent domain laws of this state.  The pamphlets must include the reasons for condemnation, the procedures followed by condemnors as defined by section 32-15-01, how citizens may influence the condemnation process, and the rights of property owners and citizens affected by condemnation.  The attorney general shall make copies of the pamphlets available to all condemnors who must be charged a price for the pamphlets sufficient to recover the costs of production.  A condemnor shall present a copy of the pamphlet to a property owner prior to making an offer to purchase and initiating a condemnation action.

The statute was amended in 2017 to delete the pamphlet requirement and to require condemnors to inform property owners of available online information contained on the Attorney General's website.  *See* 2017 N.D. Sess. Laws ch. 366, § 4.

[¶24] Although it is undisputed that Wieland did not receive a pamphlet from the City describing her rights, we reject her argument that receipt of a pamphlet is a condition precedent to an eminent domain action and reversal is therefore required.  First, the pamphlet requirement in N.D.C.C. § 54-12-01.1 is not mentioned in N.D.C.C. ch. 32-15, and the statute itself does not provide a remedy for a condemning authority's failure to provide a pamphlet.  "'When no statutory remedy is provided for a statutory violation, we look to whether the victim of the violation was prejudiced'" because "'absent a showing of prejudice, a statutory violation is not reversible error.'" *Bayles v. N.D. Dep't of Transp.*, 2015 ND 298, ¶ 17, 872 N.W.2d 626 (quoting *Johnson v. N.D. Workers Comp. Bureau*, 539 N.W.2d 295, 298 (N.D. 1995)).  Wieland was not prejudiced in this case because she was represented by an attorney during her negotiations with the City before the City made an offer.  Wieland was aware of her rights through her attorney's representation.

[¶25] We conclude the City's failure to provide Wieland a pamphlet outlining her rights had no affect on the validity of the eminent domain action.

## III

[¶26] Wieland argues this eminent domain action must be dismissed because the City failed to pay her post-judgment interest under N.D.C.C. § 28-20-34, which governs interest on judgments.

[¶27] The record shows that judgment on the jury verdict was entered on January 15, 2019, and the City deposited $850,000 with the clerk of court on January 16, 2019, in accordance with N.D.C.C. § 32-15-29. An amended judgment awarding costs and fees was entered on March 13, 2019, and the City deposited an additional $89,044.32 with the clerk of court on March 13, 2019. Wieland argues the City's failure to pay or deposit post-judgment interest at the legal rate along with the other money deposited by the City vitiates the condemnation proceedings because she has not received the entirety of just compensation due for the taking of her property. We reject Wieland's argument that dismissal is warranted.

[¶28] Wieland correctly claims the City was required to pay or deposit funds for the taking within 30 days of entry of final judgment. N.D.C.C. § 32-15-25. The City complied with this requirement by its deposits into court on January 16 and March 13, 2019. Wieland also correctly claims N.D.C.C. § 32-15-26 provides the district court with authority to "annul the entire proceedings" if the payment or deposit is not made as required. However, Wieland has provided no authority and we find none that require dismissal of the eminent domain action upon a failure to pay or deposit post-judgment interest. Rather, "[w]hen payments have been made as required in sections 32-15-25 and 32-15-26, the court must make a final order of condemnation, which must describe the property condemned and the purposes of such condemnation." N.D.C.C. § 32-15-27. That same section requires that "[a] copy of the order must be filed in the office of the recorder of the county and thereupon the property described therein shall vest in the plaintiff for the purposes therein specified." *Id.*

10

[¶29] Section 32-15-29, N.D.C.C., addresses when a landowner can take or accept payment from the condemning authority or when the landowner can withdraw funds deposited by the judgment debtor. That section also limits the issues that can be reviewed during any subsequent appeal if the landowner accepts or withdraws funds. *Id.* However, neither that section nor others in ch. 32-15 address whether a landowner's appeal in lieu of accepting or withdrawing funds requires the judgment debtor to pay post-judgment interest. Because Wieland has not raised this issue with the district court and briefed it for our review, we decline to expand Wieland's request for relief beyond her argument this action must be dismissed due to the City's failure to pay or deposit post-judgment interest.

IV

[¶30] It is unnecessary to address other arguments raised because they are unnecessary to the decision or are without merit. The judgment is affirmed.

[¶31] Lisa Fair McEvers
Daniel J. Crothers
Jerod E. Tufte
Jon J. Jensen
Gerald W. VandeWalle, C.J.